UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARLOS L.,

          Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,

         Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  ED CV 17-122-SP


MEMORANDUM OPINION AND
ORDER

## I.

## **INTRODUCTION**

On January 25, 2017, plaintiff Carlos L. filed a complaint against defendant,

the Commissioner of the Social Security Administration ("Commissioner"),

seeking a review of a denial of a period of disability and disability insurance

benefits ("DIB").  The parties have fully briefed the matters in dispute, and the

court deems the matter suitable for adjudication without oral argument.

Plaintiff presents what are effectively three disputed issues for decision:  (1)

whether the Administrative Law Judge ("ALJ") properly considered the opinions

of the medical expert and an examining physician; (2) whether the ALJ properly evaluated plaintiff's testimony; and (3) whether the ALJ properly considered a lay opinion. Joint Stipulation ("JS") at 2-16.

Having carefully studied the parties' joint stipulation on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the medical opinions to determine that plaintiff did not meet or equal Listing 1.04A. But the ALJ failed to resolve a conflict in the medical opinions regarding plaintiff's sitting limitations, and failed to properly evaluate plaintiff's credibility and consider the lay opinion. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was forty-three years old on his alleged disability onset date and has at least an eighth grade education, although att the hearing he testified he completed high school in Mexico. AR at 54, 69, 193. Plaintiff has past relevant work as a production worker. *Id*. at 255.

On November 18, 2013, plaintiff filed an application for a period of disability and DIB due to a back injury, heart condition, and anxiety. *Id*. at 69. The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 96-99, 104-10.

On January 12, 2016, plaintiff appeared and testified at a hearing before the ALJ. *Id*. at 39-67. The ALJ also heard testimony from Dr. Eric D. Schmitter, a medical expert, and Victoria Rei, a vocational expert. *Id*. at 41-53, 64-67. On January 22, 2016, the ALJ denied plaintiff's claim for benefits. *Id*. at 25-34.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff did not engage in substantial gainful activity between June 3, 2010, the alleged onset date, and December 31, 2015, the date last insured. *Id.* at 27.

At step two, the ALJ found plaintiff suffered from the severe impairment of congenital spondylolisthesis at L5-S1, status-post L4-S1 fusion in April 2012 and subsequent hardware removal in February 2015. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 29.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform a range of light work, with the limitations that plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of four hours in an eight-hour workday; sit without limitation but with the opportunity to change positions briefly, estimated to take one to three minutes every hour; and climb stairs, bend, balance, kneel, stoop, crouch, or crawl occasionally. *Id.* The ALJ precluded plaintiff from: using ladders, ropes, or scaffolds; performing work at unprotected heights or around fast moving machinery; and concentrated exposure to extreme cold or vibrations. *Id.*

The ALJ found, at step four, that plaintiff was incapable of performing his past relevant work as a production worker. *Id.* at 32.

At step five, the ALJ found that given plaintiff's age, education, work

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including small products assembler, inspector, and marker. *Id.* at 32-33. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 34.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**DISCUSSION**

**A.      The ALJ Properly Considered the Medical Opinions But Failed to Resolve a Conflict Regarding Sitting Limitations**

Plaintiff argues the ALJ's analysis of the medical evidence was not supported by substantial evidence. JS at 2-4. Specifically, plaintiff contends the ALJ improperly relied on Dr. Eric D. Schmitter's opinion that plaintiff did not meet Listing 1.04A. *Id.* at 2-3. Plaintiff also contends the ALJ improperly gave significant weight to the opinion of Dr. Thomas W. Jackson. *Id.* at 3-4.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to

---

[2]    All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (*citing Lester*, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830-31). The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d at 831.

### 1. <u>Medical History and Physicians</u>

Dr. Walter H. Burnham, an orthopedic surgeon, treated plaintiff's adult lytic spondylolisthesis, lumbar spinal stenosis, and lumbar radiculopathy from July 2011 through June 2012 in connection with his workers' compensation case. *See* AR at 258, 270, 278. On April 6, 2012, after conservative treatment produced only limited, temporary relief, Dr. Burnham performed lower back surgery, including a combined anterior plus a posterior decompression and fusion at L4-5 and L5-S1. *Id.* at 513-20, 528. Two months after the surgery, plaintiff was wearing a back brace, using a cane, and had an antalgic gait, but plaintiff had full range of motion in knees and hips, full motor strength, and no tenderness. *Id.* at 278-81.

Dr. Jack. H. Akmakjian, an orthopedic surgeon, treated plaintiff from October 2012 through at least September 2015 in connection with his workers' compensation case. *See id.* at 481, 570. Dr. Akmakjian consistently observed plaintiff had spasm in the cervical and lumbar spine, painful and decreased range of motion in the cervical and lumbar spine, tenderness to palpation over the hardware in the lumbar spine, positive straight leg raise tests, and radiculopathy in the cervical spine. *See, e.g., id.* at 392-93, 406-07, 450-51. Images showed

plaintiff had, among other things, disc desiccation in the cervical spine, bilateral L5 spondylolysis with 5 mm spondylolisthesis, and a left paracentral disc protrusion at L1-2. *Id*. at 413, 596. Dr. Akmakjian treated plaintiff with narcotics and a TENS unit, and recommended removal of the hardware. *See, e.g., id*. at 357, 393. After removal of the hardware, Dr. Akmakjian recommended physical therapy and steroid injections. *See id*. at 571.

Dr. Thomas W. Jackson, an orthopedic surgeon, examined plaintiff in December 2011, January 2013, and July 2015 in connection with his workers' compensation case. *Id*. at 335-50, 526-39, 556-69. At the examinations, Dr. Jackson observed plaintiff had some difficulty getting on and off the examination table, a mildly antalgic or wide gait, reduced or painful range of motion in the lumbar, tenderness, full motor strength, intact sensory, and positive single leg raise tests in the supine position. *See id*. at 337, 339, 530-31, 559. Based on his examination and plaintiff's medical records, Dr. Jackson diagnosed plaintiff with degenerative disc disease of the lumbar spine at L4-5 and L5-S1 associated with a Grade I to II spondylolithesis at L5-S1 plus facet spondylosis, bilateral lower extremity radiculitis status post lower back surgery and hardware removal, and an apparent chronic pain syndrome. *Id*. at 534. Dr. Jackon opined plaintiff should be precluded from substantial work, which was halfway between a heavy and light work restriction, as well as prolonged sitting, weight bearing, standing, and walking. *Id*. at 348, 537, 567

Dr. Eric D. Schmitter, an orthopedic surgeon, testified as a medical expert at the hearing. *Id*. at 42-53. Dr. Schmitter testified there were inconsistent findings in the records and Dr. Akmakjian's treatment notes were below the required standard of care. *Id*. at 42-43, 48. Dr. Schmitter opined plaintiff did not meet or equal a Listing because he did not have the documented neurologic deficits. *Id*. at 45. Instead, Dr. Schmitter diagnosed plaintiff with spondylolisthesis, and opined

he had the RFC to perform light work; stand and walk four hours out of an eight-hour workday; sit without limitations so long as he had postural changes on an occasional basis; and occasionally climb ladders, crawl, creep, and stoop. *Id*. at 42, 46-47. Dr. Schimitter precluded plaintiff from working around unprotected heights and on scaffolds. *Id*. at 46.

## 2. **The ALJ's Findings**

The ALJ determined plaintiff had the RFC, in relevant part, to perform light work with the following limitations: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of four hours in an eight-hour workday; sit without limitation but with the opportunity to change position briefly, estimated to take one to three minutes every hour; and climb stairs, bend, balance, kneel, stoop, crouch, or crawl occasionally. *Id.* at 29. In reaching this RFC determination, the ALJ gave substantial or significant weight to the opinions of Dr. Schmitter and Dr. Jackson. *Id*. at 31.

## 3. **The ALJ Properly Considered Dr. Schmitter's Opinion**

Plaintiff contends that, by adopting Dr. Schmitter's opinion that he did not meet Listing 1.04A, the ALJ improperly rejected Dr. Akmajian's opinion. JS at 2-3. But Dr. Akmakjian did not offer an opinion as to whether plaintiff met or equaled a Listing. Indeed, the only opinions offered by Dr. Akmakjian were the workers' compensation progress reports, in which he opined plaintiff was temporarily unable to work. *See, e.g.,* AR at 396, 404, 441. Thus, a more accurate characterization of plaintiff's argument is that Dr. Schmitter's opinion was not supported by the findings in Dr. Akmakjian's treatment notes.

At step three, Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings . . . we will find that you are disabled."); 404.1520(d) ("If

you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."). In other words, if a claimant meets or equals a Listing, he or she will be found disabled at this step "without further inquiry." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In such case, there is no need for the ALJ to complete steps four and five of the sequential process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099. To establish that an impairment is medically equivalent to a listed impairment, it is the claimant's burden to show his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *see* 20 C.F.R. § 404.1526(a)-(b). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 514 ("A finding of equivalence must be based on medical evidence only."). "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 404.1526(b)(2).

Here, plaintiff failed to demonstrate his impairment met or was medically equivalent to Listing 1.04A, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

disease, facet arthritis, vertebral fracture), resulting in compromise

of a nerve root (including the cauda equina) or the spinal cord.

With:

      A. Evidence of nerve root compression characterized by

neuro-anatomic distribution of pain, limitation of motion of the

spine, motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and, if

there is involvement of the lower back, positive straight-leg raising

test (sitting and supine).

Listing 1.04A.

      In order to meet Listing 1.04A, a claimant must show that he suffered from a

disorder of the spine and nerve root compression. The ALJ, relying on the medical

evidence and Dr. Schmitter's opinion, determined plaintiff did not meet Listing

1.04A. *See* AR 29-31. The ALJ found that plaintiff had congenital

spondylolisthesis, status post a lumbar fusion and hardware removal. *Id*. at 27.

But the ALJ determined the evidence did not show nerve root compression

accompanied by the necessary neurological deficits. *Id*. at 29. As Dr. Schmitter

testified, to meet Listing 1.04A, plaintiff must suffer from neurological deficits

including muscle weakness, motor loss, and dermatomal sensory loss. *Id*. at 42-45,

47.

      There was no dispute that plaintiff complained of pain and had limited range

of motion in the lumbar spine. *See, e.g., id*. at 401, 445, 529-30. But Listing

1.04A also required showings of other neurological deficits, including motor loss

or weakness and sensory loss. Plaintiff contends the treatment notes documented

motor loss or weakness. JS at 2-3. But there were only three instances in Dr.

Akmakjian's notes, which span four years, where plaintiff had slightly less than

full motor strength. *See* AR at 573, 577, 581. The evidence therefore reasonably

supported ALJ's reliance on Dr. Schmitter's opinion that plaintiff did not suffer from motor loss. And even assuming three instances of motor weakness were sufficient, Dr. Akmakjian did not record any sensory loss in the lumbar spine, which is also fatal to plaintiff's argument.[3] *See, e.g., id*. at 401, 445, 530-31.

As such, the ALJ properly found plaintiff did not meet Listing 1.04A. The ALJ's acceptance of Dr. Schmitter's opinion and his step three finding were supported by substantial evidence.

## 4. The ALJ Properly Considered Only a Portion of Dr. Jackson's Opinion

Plaintiff contends the ALJ improperly gave significant weight to the opinion of Dr. Jackson. JS at 3-4. Although plaintiff characterizes his argument as one of improper weight, plaintiff is not actually arguing that the ALJ improperly gave great weight to Dr. Jackson's opinion, but rather the ALJ conflated the workers' compensation terminology with social security disability terminology. *Id.* In other words, the ALJ failed to translate the language in workers' compensation reports into comparable Social Security terminology. Additionally, plaintiff contends the ALJ rejected Dr. Jackson's opinion that he could not engage in prolonged sitting without explanation. *Id*. at 4.

An ALJ must consider the distinctions between workers' compensation and social security disability terminology. *See Desrosiers v. Sec'y*, 846 F.2d 573, 576

---

[3] It is also questionable whether plaintiff demonstrated another criterion of Listing 1.04A – positive straight leg raise tests *both* in the supine and sitting positions. Although plaintiff had positive straight leg raise tests, Dr. Jackson only performed the tests in the supine position and Dr. Akmakjian did not indicate whether he performed the tests in a supine or sitting position, or both. *See* AR at 531, 559. On some occasions, Dr. Akmakjian noted both a positive Lasegue and straight leg raise test (also known as a Lasegue test) which suggests he may have performed the test in both positions, but that is speculative. *See, e.g., id.* at 577, 587.

(9th Cir. 1988); *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1109 (C.D. Cal. 2002) (ALJ erred when he failed to adequately translate physician's workers' compensation terms into Social Security terms); *Payan v. Chater*, 959 F. Supp. 1197, 1204 (C.D. Cal. 1996). And "[w]hile the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the difference between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand," and take those differences into account. *Booth*, 181 F. Supp. 2d at 1106. An ALJ is also "entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Here, the ALJ did not expressly translate the worker's compensation terms but her RFC determination indicates that she recognized some distinctions. Dr. Jackson opined plaintiff should be precluded from substantial work, which is halfway between a heavy work and light work restriction. AR at 348, 537, 567. The ALJ expressly recognized this opinion, and gave significant weight to Dr. Jackson's opinions generally, but in her RFC determination she limited plaintiff to light work. *Id.* at 29-31. Had the ALJ not recognized the distinction between workers' compensation and social security terminology, she may well have concluded that Dr. Jackson opined plaintiff could perform medium work in the social security context.

In the workers' compensation context, a preclusion from substantial work means the claimant has "lost approximately 75% of [his] pre-injury capacity for performing such activities as bending, stooping, lifting . . . or other activities involving comparable physical effort." 1997 Schedule for Rating Permanent Disabilities at 2-15. Prior to his injury, plaintiff was performing his past, relevant

work at a heavy level.[4] Seventy-five percent of his pre-injury capacity would be approximately light work. Thus, although the ALJ did not expressly say so, it appears that the ALJ reasonably inferred a preclusion from substantial work under workers' compensation terminology meant plaintiff could perform light work in the social security context, as well as occasionally bend, stoop, kneel, crouch, or crawl, as defined by the social security regulations. *See Gabouri v. Astrue*, 2012 WL 4490875, at *3 (C.D. Cal. Sept. 28, 2012) (the ALJ's RFC determination, which precluded claimant from repetitive bending or stooping, incorporated a rational interpretation of workers' compensation physician's opinion precluding claimant from substantial work); *see also Macri*, 93 F.3d at 544 (an ALJ reasonably inferred that a worker who lost half of his pre-injury capacity for lifting and bending, and whose prior job required lifting forty pounds occasionally and constant bending, could perform light work as defined by the Social Security Act).

Although the court finds no error in the failure to explicitly translate the preclusion from substantial work in the workers' compensation context, the same is not true of the ALJ's failure to consider the distinction between "prolonged sitting" in the worker's compensation and social security contexts, and failure to explain why she did not incorporate Dr. Jackson's opinion that plaintiff be precluded from prolonged sitting into her RFC determination. In contrast to "substantial work," "prolonged sitting" is not defined in the workers' compensation context.[5] *Campos*

---

[4] Heavy work is defined as lifting and/or carrying 100 pounds occasionally and 50 pounds frequently. 20 C.F.R. § 404.1567(d).

[5] In workers' compensation parlance, the preclusion from prolonged weight bearing contemplates the ability to do work approximately 75% of the time in standing or walking position. 1997 Schedule for Rating Permanent Disabilities at 2-19. But prolonged sitting is not defined. The courts in this circuit have applied different definitions to prolonged sitting. *See, e.g., Argueta v. Colvin*, 2016 WL 4138577, at *10-*11 (E.D. Cal. Aug. 3, 2016) (the ability to sit for one hour at a time up to six hours was a reasonable interpretation of "no prolonged sitting");

1  *v. Astrue*, 2012 WL 1268368, at *7 (C.D. Cal. Apr. 13, 2012). But a settled
2  definition is unnecessary to determine the ALJ erred.

3      The ALJ gave significant weight to both Dr. Schmitter's and Dr. Jackson's
4  opinions, but the two physicians provided conflicting sitting limitations. Dr.
5  Schmitter opined plaintiff could sit without limitation so long as he was able make
6  postural changes on an occasional basis, while Dr. Jackson precluded plaintiff from
7  prolonged sitting. *See* AR at 46, 537. The ALJ adopted Dr. Schmitter's opinion
8  and further clarified that the postural changes would only amount to one to three
9  minutes an hour. *Id*. at 29. But this is in clear conflict with Dr. Jackson's opinion.
10  As Dr. Schmitter testified, his opinion regarding plaintiff's ability to sit was the
11  typical work standard. *Id*. at 46. In other words, Dr. Schmitter opined no sitting
12  limitations. Thus, to say that the ALJ took into account Dr. Jackson's sitting
13  limitation would render the term "prolonged sitting" meaningless.

14      Although "it is the responsibility of the ALJ . . to determine residual
15  functional capacity" and an ALJ may adopt or accept all, some, or none of a
16  physician's opinion, the ALJ must explain why. *Vertigan v. Halter*, 260 F.3d
17  1044, 1049 (9th Cir. 2001); *Magallanes*, 881 F.2d at 753-54. Here, the ALJ
18  properly translated and adopted Dr. Jackson's opinion precluding plaintiff from
19  substantial work. But the ALJ failed to provide a specific and legitimate reason for
20  rejecting Dr. Jackson's sitting limitation.

21      Accordingly, the ALJ's determination that plaintiff did not meet Listing
22  1.04A and was capable of light work was supported by substantial evidence. But
23  the ALJ erred in failing to resolve a conflict regarding plaintiff's sitting limitations.

24  **B.    The ALJ Improperly Discounted Plaintiff's Testimony**

25

26  _____

27  *Booth*, 181 F. Supp. 2d at 1108 ("It is logical to assume that [the workers'
   compensation physician's] reference to 'prolonged' sitting means sitting at least
28  half of the work day.").

14

Plaintiff argues the ALJ failed to properly consider his testimony. JS at 9-11. Specifically, plaintiff contends that none of the reasons the ALJ provided for finding his testimony less credible were clear and convincing and supported by substantial evidence. *See id.*

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[6] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at

---

[6] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1202 n.1 (internal citations omitted).

29-30.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony.  Here, without expressly identifying them as reasons to discount plaintiff's testimony, the ALJ discounted plaintiff's subjective complaints because:  (1) his treatment plan "effectively mitigated" his symptoms; (2) plaintiff only received conservative treatment after his first surgery; and (3) his symptoms were not supported by objective medical evidence.  *Id*. at 30-31; *see Magallanes*, 881 F.2d at 755 (an ALJ need not recite "magic words," a reviewing court may draw inferences from an opinion).

At the January 2016 hearing, plaintiff testified that he suffered from pain in his back, legs, and neck due to a workplace accident.  *See* AR at 57-59.  Consequently, plaintiff testified that he could only walk for thirty minutes with a cane; could sit for twenty to thirty minutes at a time for a total of three hours a day, with the ability to change positions; stand for about three hours total during the day; could lift about eight pounds; could not stoop; and needed to lie down two to three times a day for about 20-30 minutes.  *See id*. at 59-63.  Plaintiff further testified that his wife helped him with washing, his wife did the housework, and his son and son-in-law did the yard work.  *See id*. at 62-63

In a January 2014 Function Report, plaintiff stated he could not sit and stand for extended periods of time in one position.  *Id*. at 211.  Plaintiff reported he used a walker or cane to walk and could only walk about ten minutes before needing to rest for five to ten minutes.  *Id*. at 216-17.  Plaintiff stated he was scheduled to have another surgery on his back.  *Id*. at 211.

The first reason the ALJ provided for finding plaintiff's allegations less credible was his symptoms were effectively mitigated by medication and injections in 2011 and by medication and a TENS unit post-surgery.  *Id*. at 30-31; *see Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). This reason was not supported by substantial evidence for either period.

The fact that plaintiff underwent surgery in April 2012 belies the ALJ's finding that plaintiff's symptoms were effectively mitigated by medication and injections in 2011. The pre-2012 surgery medical records also do not support the ALJ's finding. In July 2011, Dr. Burnham noted plaintiff was taking narcotics, an anti-inflammatory, and a muscle relaxant to treat his pain. AR at 259. Dr. Burnham opined a steroid injection might temporary relieve plaintiff's symptoms but it was not a "definitive treatment" and recommended surgery. *Id*. at 263. In October, 2011, Dr. Randy Rosen, a pain management specialist, noted that plaintiff experienced more than 70% relief for four weeks and more than 60% relief for eight weeks after receiving an epidural steroid injection. *Id*. at 501-02. But in December 2011, Dr. Jackson determined that plaintiff had only limited response on a temporary basis and opined there was "no significant probability" that plaintiff's symptoms would improve without surgical intervention. *Id*. at 565.

The ALJ's finding that plaintiff obtained effective mitigation with pain medication and a TENS unit post-surgery was also not supported by substantial evidence. Initially, plaintiff showed good improvement following his April 2012 surgery. *See id*. at 266-67. By June 2012, however, plaintiff complained of increased pain and increased his narcotic usage. *Id*. at 278. Although the surgery was adequately performed and there was no indication of hardware failure, his physicians diagnosed plaintiff with symptomatic hardware lumbar spine and recommended hardware removal. *See id*. at 346-47, 446. While authorization for further surgical intervention – hardware removal – was pending, physicians treated plaintiff's symptoms with pain medication and a TENS unit, which helped " a little." *See, e.g., id*. at 357, 393, 419, 425. Subsequent to the second surgery,

17

plaintiff continued to have tenderness and complain of pain. *See id.* at 529, 570. Although plaintiff's pain decreased in frequency, it remained the same in intensity and would decrease only from 8/10 to 5/10 with medication. *See id.* at 536, 570. Therefore, as with the first period, the fact that physicians recommended a second surgery, as well as his continuing pain, undermined the ALJ's finding that plaintiff's symptoms were effectively mitigated after the 2012 surgery.

The ALJ's second reason for discounting plaintiff's testimony was because plaintiff only received conservative treatment "during this period" following his first surgery. *See AR* at 30; *see also see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted). It is unclear from the decision to what period of time the ALJ refers. To the extent the ALJ was referring to the period between the April 2012 surgery and January 2013, she was arguably correct that plaintiff was only treated conservatively, as some courts have found the use of narcotic medication, by itself, to constitute conservative treatment. *See Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded to conservative treatment, which included the use of narcotic medication); *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that plaintiff had been prescribed narcotic medication at various times, plaintiff's treatment as a whole was conservative). But plaintiff had just had surgery, to which he initially responded well, and this period of time was relatively short. As plaintiff continued to complain of pain, Dr. Jackson recommended additional surgery, which is indisputably not conservative. *See id.* at 346-47; *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (surgery is not a conservative treatment). As such, the fact that plaintiff was initially treated conservatively for the period between his first surgery and January 2013 was not a clear and

convincing reason to find plaintiff's subjective complaints less credible.

Similarly, to the extent the ALJ found plaintiff less credible because he continued to receive conservative treatment after January 2013, that was also not a clear and convincing reason. Notwithstanding the fact that it is not apparent if the use of narcotic medication may be considered conservative treatment, in January 2013, Dr. Jackson recommended a second surgery. Therefore, the fact that plaintiff was only treated with narcotics until the insurance company authorized the second surgery in 2015 would not support the ALJ's credibility analysis. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). And several months following the second surgery, plaintiff's physician recommended physical therapy and steroid injections in addition to the narcotic medications, an overall treatment plan that has been viewed as not conservative. *See Lapeirre-Gutt*, 382 Fed. Appx. at 664 (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative).

Finally, the ALJ appeared to cite a third reason for finding plaintiff less credible – his alleged limitations were not supported by the objective medical evidence. *See* AR at 30; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating credibility). Based on the ALJ's discussion, this argument only pertained to the post-2012 surgery period. In support of this finding, the ALJ cited a February 2013 CT scan that showed no evidence of hardware failure or loosening and only mild degenerative changes; examination findings that reflected little

significant demonstrated functional deficiency; an October 2014 CT scan that showed only mild neural foraminal or central canal narrowing; and a normal conduction test. *See* AR at 30. The ALJ correctly identifies objective findings that do not support the intensity of plaintiff's alleged symptoms. But the ALJ engaged in a selective discussion, omitting findings that supported plaintiff's allegations. Throughout 2012 through 2015, physicians observed, among other things, an antalgic or wide gait; difficulty rising from a chair; tenderness and spasm in the lumbar and cervical spine; decreased and painful range of motion in the lumbar and cervical spine; and positive single leg raise tests. *See, e.g., id.* at 337, 339, 356-57, 397-98, 417-18, 482. MRIs from January 2013 and February 2014 showed plaintiff had a straightening of the cervical spine, disc desiccation at two levels, and a focal central disc protrusion effacing the thecal sac at multiple levels. *See id.* at 412-13, 464-65. Thus, contrary to the ALJ's finding, there was some objective evidence to support functional limitations. Nevertheless, because the evidence can reasonably support affirming or reversing the ALJ's finding, the court will not substitute its judgment as to this reason.

In sum, the ALJ cited one valid reason to discount plaintiff's testimony, but the lack of objective medical evidence cannot, by itself, be a clear and convincing reason for finding a claimant's pain testimony less credible. *Rollins*, 261 F.3d at 856 (if there is evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain solely on the basis of lack of objective medical evidence to support it). Accordingly, the ALJ's adverse credibility determination was not supported by substantial evidence.

**C.    The ALJ Failed to Properly Consider the Lay Opinion**

Plaintiff contends the ALJ failed to provide germane reasons for rejecting the statement of a lay person, Juan C. Trujillo.  JS at 11.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R.§ 404.1513(d)(4) (explaining that the Commissioner will consider all evidence from "non-medical sources[,]" including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy").  The ALJ may only discount the testimony of lay witnesses if he provides specific "reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see Lewis*, 236 F.3d at 511 ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

Juan C. Trujillo, plaintiff's son, completed a Third Party Function Report on January 24 and 27, 2014.  AR at 202-10.  In the Function Report, Trujillo stated plaintiff: struggled with personal care; could not do house and yard work because it caused him discomfort; could drive; bought groceries but did not unload them; could not go to gatherings if there was a long drive or no opportunity to rest; could only lift 15-20 pounds; could only walk for ten to fifteen minutes at a time; and used a cane or walker to ambulate.  *Id*. at 203-08.  Trujillo also stated plaintiff's impairments affected his ability to lift, squat, bend, reach, sit, kneel, climb stairs, complete tasks, and use his hands.  *Id*. at 207.

The ALJ rejected the lay opinion on the basis that it "essentially reitererate[d]" plaintiff's subjective allegations, which were not fully corroborated

by the medical evidence. *Id.* at 32. In other words, the ALJ found that Trujillo was simply repeating plaintiff's own complaints rather than providing his observations. And because plaintiff's complaints were not supported by the medical evidence, neither were Trujillo's statements.

Although an ALJ may reject a lay opinion that merely repeats a claimant's complaints, he must consider lay testimony based on that person's own observations. *Wheatley v. Berryhill*, 706 Fed. Appx. 424, 425 (9th Cir. 2017) ("The ALJ erred in giving little weight to [the] lay testimony because he actually based his testimony on his own observations rather than [claimant's] subjective complaints."); *Dodrill*, 12 F.3d at 918-19. Trujillo lived with plaintiff and thus was in a position to observe plaintiff frequently. AR at 202; *see Dodrill*, 12 F.3d at 918-19 (testimony from witnesses who saw a claimant on a frequent basis cannot easily be disposed of on the basis that he was simply repeating a claimant's complaints because they are in a position to observe plaintiff's daily activities and symptoms). Nothing in the third party function report suggests that Trujillo's opinion was based on plaintiff's complaints rather than his own observations. Indeed, Trujillo even characterized some of his statements as observations. *See, e.g.,* AR at 203 ("I can see he struggles.").

To the extent that the ALJ found Trujillo's opinion was not supported by objective medicine, that reason also was not sufficient. An ALJ may reject lay testimony if it is *inconsistent* with medical evidence, but not if it is simply *unsupported* by medical evidence. *Compare Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)) with *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (a lack of support from the medical evidence is not a proper basis for disregarding lay observations); *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (same). In finding that a lack of

support from medical evidence is not a germane reason to discount lay testimony, the Ninth Circuit notes that the "fact that lay testimony . . . may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich*, 874 F.3d at 640 (citing *Smolen*, 80 F.3d at 1289).

Accordingly, the ALJ did not provide a germane reason for discounting the Third Party Function Report of Juan C. Trujillo.

## V.

## <u>REMAND IS APPROPRIATE</u>

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required. On remand, the ALJ shall reconsider Dr. Jackson's sitting limitation and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall also reconsider plaintiff's testimony, and either credit his subjective complaints or provide clear and convincing reasons for rejecting them, and reconsider the lay testimony and either credit it or provide germane reasons supported by substantial evidence for rejecting it. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED: March 28, 2019

_____
SHERI PYM
United States Magistrate Judge